UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEICIA McCULLOUGH, | ) | CASE NO. 5:16-cv-527 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BOARD OF EDUCATION OF CANTON | ) | **AND ORDER** |
| CITY SCHOOL DISTRICT, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion for partial summary judgment (Doc. No. 29 ["Mot."]) filed by defendant Board of Education of Canton City School District (the "District" or "defendant"). Plaintiff Aleicia McCullough ("McCullough" or "plaintiff") filed a memorandum in opposition (Doc. No. 30 ["Opp'n"]), and defendant filed a reply (Doc. No. 34 ["Reply"]). For the reasons discussed below, the motion is granted.

## I. BACKGROUND [1]

McCullough was hired by the District on August 22, 2011 as an Intervention Specialist on a one-year limited contract for the 2011-2012 school year; she was assigned to McGregor Elementary School. (Doc. No. 28 ["McCullough Dep."] at 312, 319, 324;[2] Exs. 1, 2.) In that capacity, she taught special education students, each subject to an individual education plan ("IEP"). (*Id.* at 319-20.) Plaintiff took students out of their regular classrooms and worked with

---

[1] This factual background is set forth merely as context. Since the Court is now ruling on a motion for only partial summary judgment and will proceed to trial on the remaining claims, this background, although believed to consist of only undisputed facts, is not to be construed as binding findings of fact. Burdens of proof will still need to be met at trial.

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

them on their level in a resource room. (*Id.* at 320.) Her initial caseload consisted of 21 students in third and fourth grades, but that number decreased to 16 over the school year. (*Id*. at 331-32.) Although her caseload was larger than that of other intervention specialists, plaintiff had no objection and felt she could handle it. (*Id*. at 332.)

On March 15, 2012, plaintiff was evaluated by her principal, Marianna Arvidson, by means of a "Performance and Growth Assessment Summary" ("PGAS"). (*Id.* at 334 & Ex. 3; Opp'n Ex. 3.) The PGAS measured teachers on seven standards, each with two or three subsections, seventeen in all.[3] Although plaintiff was rated "Unsatisfactory" (as opposed to "Proficient") on two of the seventeen subsections, she was rated "Proficient" overall. (McCullough Dep. at 437.)[4] Plaintiff did not disagree with her rating, since this was her first year and there was "[a] learning curve[.]" (*Id.* at 335, 336-37.)

The District offered plaintiff a second one-year limited contract as an Intervention Specialist at McGregor Elementary School for the 2012-2013 school year. (*Id*. at 343 & Ex. 5.) During this school year, plaintiff maintained a caseload of 15 first, second, and third grade special education students. (*Id*. at 343-44.) She had no trouble dealing with these younger children, and she never complained about the change in her assigned grade levels. (*Id.* at 345, 346.)

On November 20, 2012, plaintiff received a letter from the District's Department of School Improvement. The letter advised that the District had established Peer Assistance and Review ("PAR") "to help second year teachers . . . acquire the knowledge and develop the skills and

---

[3] For each subsection, a teacher could be rated either "Unsatisfactory" or "Proficient," with an explanation for that rating in a box identified as "Evidence/Suggestions for Improvement." There was also a separate rating identified as "Exemplary for Standard," with a box for "Explanation for Exemplary Rating." It does not appear that plaintiff ever received any exemplary ratings.

[4] There were three possible overall ratings: Unsatisfactory (for 5 or more unsatisfactory ratings), Proficient (for 13 or more proficient ratings), and Exemplary (for 5 or more exemplary ratings and no unsatisfactory ratings).

attitudes necessary to become successful in the educational arena[.]" (*Id*. Ex 6 at 440.)[5] The letter noted that plaintiff's "instructional practices [were] in need of improvement[,]" and identified three areas where she needed to "develop and/or enhance" her skills: designing engaging lessons, motivating students, and using effective teaching methods. (*Id.*) The letter also warned that "[f]ailure to comply with the district's expectations could result in the loss of [her] teaching position." (*Id.*) Plaintiff did not oppose being in this program and was, in fact, "excited" about it. (*Id.* at 350.) She did not view it as a punitive measure. (*Id.*) She also did not object to the deficiency listing, but she did discuss with her principal and others that "there [were not] any type of examples as to what this should look like, sound like, smell like, be like, feel like from [her] PAR consultant." (*Id.* at 348.)

After a year under PAR, plaintiff's PGAS overall rating on March 11, 2013, was "Proficient." In addition, she had raised her previous "unsatisfactory" score on two of the seventeen subsections to "proficient," although she dropped from "proficient" to "unsatisfactory" in one new subsection. (Opp'n Ex. 5.)[6]

The District offered plaintiff a third one-year limited contract as an Intervention Specialist for the 2013-2014 school year and assigned her to Schreiber Elementary School. (McCullough Dep. Ex. 4; McCullough Aff. ¶ 10.) There she maintained a caseload of 11 second and third

---

[5] It appears, although the record is not entirely clear, that PAR was offered to *all* second year teachers, as well as to "veteran teachers who [were] experiencing difficulties in the performance of their professional classroom duties." (*Id.* Ex. 6 at 440.) Therefore, the mere fact that plaintiff participated in PAR and had some identified deficiencies is not necessarily proof that the District had any particular concerns about her performance at this early stage in her career.

[6] The District, improperly relying upon plaintiff's deposition Ex. 8 as her "final evaluation for the 2012-2013 school year" (Mot. at 457), mischaracterizes plaintiff's rating for this school year as "Unsatisfactory." But, although this evaluation form does not indicate the school year to which it applies, it is dated 11/25/2013, a date that would not fall within the 2012-2013 school year. Further, it lists "Aaron Bouie" as the observer. Bouie was an assistant principal hired by the District in August 2013 (that is, at the beginning of the 2013-2014 school year); he worked at Schreiber Elementary School. (Doc. No. 33 ["Bouie Dep."] at 904, 907.) Schreiber was the school where plaintiff was assigned during her third year. (Doc. No. 30-1 ["McCullough Aff."] ¶ 10.)

graders. (McCullough Dep. at 370.) Prior to this school year, plaintiff had no health problems. In October 2013, she was diagnosed by her own doctor with fibromyalgia and was scheduled to meet with a specialist at the Cleveland Clinic to confirm the diagnosis and receive "more expertise." (McCullough Dep. at 362-63.) Plaintiff provided her principal, Chastity Trumpower, and her assistant principal, Aaron Bouie, with a physical copy of the diagnosis; but she did not ask for any accommodation, other than occasionally being permitted to leave 20 minutes early to go for doctor appointments, which was permitted. (*Id.* at 363, 365.)

On December 20, 2013, the last day before the school's Christmas break, plaintiff "had an incident where [she] had passed out with the students in the resource room[.]" (*Id.* at 375.) Trumpower testified that she walked into plaintiff's classroom, as part of her usual rounds of the building, "and she appeared to be sleeping at her desk." (Doc. No. 32 ["Trumpower Dep."] at 769.) Although plaintiff claimed to be okay, Trumpower was alarmed and called the school nurse. Afterwards, plaintiff was taken to the hospital. (*Id.* at 769-70.)

Plaintiff did not return to school after the Christmas break. Instead, she took time off from January through April 2014, using accumulated sick leave. (McCullough Dep. at 366.) Upon her return in April, she resumed her work with her first and second grade caseload (plus a kindergarten student), although she claims that, on December 20th, "[a]s they were rolling [her] to the liftgate [to go to the hospital]" (*id.* at 376-77, 381), Trumpower had told her she would be assigned fourth and fifth graders upon her return because it would be an "easier workload" for her. (*Id.* at 377.) Plaintiff believes fourth and fifth grade students *would* have been easier and, therefore, would have amounted to an accommodation. She admits, however, that she never made a formal request after her return to be reassigned to the older children as an accommodation for her disability, never had her physician contact the District to make a request on her behalf, and never filed a grievance with

4

her union over the assignment. (*Id*. at 381, 383.) Plaintiff believes, however, that she was assigned the younger children upon her return because the District "wanted to make it so hard for [her] that [she] would just give up." (*Id.* at 381.)

After her return from her medical leave, plaintiff experienced at least one other health-related incident at school on May 2, 2014, which Bouie memorialized in email notes to himself. (Doc. No. 33 ["Bouie Dep."] at 941.)[7] Bouie reported that, while intervening with a student, he encountered McCullough as she was discussing the incident from her perspective. He "noticed her slurring her speech and acting out of her normal personality." (*Id*. Ex. 27.) She told him she was not feeling well, and Bouie asked her to go to the nurse's office, which she agreed to do. Although the nurse had some concerns about McCullough's medications, her vitals were reportedly fine. Nonetheless, because McCullough still did not feel well, Bouie asked her to go home and to call him to confirm she had arrived there safely, which she did. (*Id.*)

During the 2013-2014 school year, plaintiff received a verbal warning on October 13, 2013 relating to an improper use of her cell phone during instructional time; this was memorialized in an email. (Trumpower Dep. Ex. 5.) She also was given a written reprimand due to a tardy arrival on December 9, 2013, although she did not formally receive it until March 2014 while she was on leave. (*Id.* Exs. 14, 15.) On November 25, 2013, Bouie evaluated plaintiff, using a new evaluation form mandated by the State (*see* Trumpower Dep. at 735-36),[8] giving her an overall rating of

---

[7] There are two email memos, both dated May 2, 2014, but one was written at 3:04 PM (Bouie Dep. Ex. 27) and the other at 3:46 PM (*id.* Ex. 20). They appear to be discussing two different incidents, but Bouie had no clear memory about either one. (*See id.* at 941-48.)

[8] Trumpower noted "the demands of the OTES" and testified that it was "a much more time-consuming evaluation tool than tools that had been used in the past." (Trumpower Dep. at 737.) To help with the evaluations, "assistant principals were brought in[.]" (*Id.*)

"Ineffective." Plaintiff agreed with that rating.[9] (McCullough Dep. at 388-89 and Ex 8.) On April 25, 2014, using the same evaluation form, Bouie rated plaintiff as "Developing." (*Id*. Ex. 9.)[10] But, on May 13, 2014, her rating was once again down to "Ineffective." (Bouie Dep. Ex. 23.)

The District did not offer plaintiff a contract for the 2014-2015 school year. (McCullough Dep. at 384.) This decision was communicated to McCullough by letter dated May 16, 2014 from Daniel Nero ("Nero"), Senior Executive Director of Instructional Personnel, who sent it on behalf of the Superintendent. (Opp'n Ex. 36 [Doc. No. 30-32].) When asked why her contract was not renewed, plaintiff testified that her employment was "[a]t will." (McCullough Dep. at 384.)[11] But she also believes that her fibromyalgia was the true reason, despite admitting that she had no evidence to support that belief. (*Id.* at 385, 393.) Further, when asked whether she considered herself "disabled," plaintiff responded in the negative. (*Id.* at 383-84.)

At the time of her deposition, plaintiff acknowledged that she was still working and still taking care of her family. (*Id.* at 384.) She was employed by Summit Academy Management, a charter school, as a long-term intervention specialist. (*Id.* at 158.) Her job entailed traveling within a one-hour radius of her home to deal with special education students in the entire charter school district ranging in grades from first through sixth. (*Id.* 158-59; 165.)

---

[9] There were four possible ratings: Ineffective, Developing, Skilled, and Accomplished.

[10] It is notable that plaintiff returned from her extended leave two days earlier, on April 23, 2014. (McCullough Aff. ¶ 27.)

[11] Acknowledging that the District was not required to renew McCullough's contract, the parties refer to plaintiff's contract as "at will." "Whether an employment contract is one at will . . . depends upon the terms of the contract as mutually agreed upon by the parties[.]" *Pond v. Devon Hotels, Ltd.*, 563 N.E.2d 738, 744 (Ohio Ct. App. 1988). Here, each contract was for a particular term, with beginning and ending dates specified. Whether the relationship was "at will" need not be decided.

## II. DISCUSSION

**A.     Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary

standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**B.     Analysis**

The Americans with Disabilities Act ("ADA") prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Ohio Revised Code § 4112.02(A) similarly prohibits such discrimination.

Plaintiff claims that she was discriminated against, and that her employment contract with the District was non-renewed, based upon either actual or perceived disability, under both federal

and state law. (*See* Compl., Counts I through IV.)[12] Defendant seeks summary judgment on these four claims, arguing that plaintiff cannot meet her *prima facie* burden and that, in any event, it had a legitimate non-discriminatory reason for not renewing her final one-year limited contract.

The District raises four specific arguments. First, it argues that plaintiff cannot establish a *prima facie* case of disability discrimination because the record is devoid of any evidence that her fibromyalgia had a substantial limiting effect on her, as required by the ADA, which defines "disability" to include "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) [having] a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). Second, defendant argues that plaintiff cannot establish that she was a "qualified" disabled person, that is, "an individual [with a disability] who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).[13] Third, defendant argues that plaintiff cannot show that it lacked a legitimate non-discriminatory reason for the non-renewal of her 2013-2014 one-year limited contract. And, fourth, the District argues there is no evidence that anyone in the District "regarded" plaintiff as disabled.

1. **Burden Shifting Analysis Under the ADA**

This Court analyzes both federal and state law claims of discrimination "under a single framework." *Wheat v. Columbus Bd. of Educ., Columbus Pub. Sch.*, 644 F. App'x 427, 429 (6th Cir. 2016) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010)).

---

[12] Plaintiff also asserts a claim for unlawful interference with rights under the Family and Medical Leave Act (Count V) and a claim of intentional infliction of emotional distress (Count VI). Defendant has not moved for summary judgment on these claims.

[13] Defendant, correctly, does not challenge that non-renewal of a one-year contract is not an adverse employment action; there is plenty of case law that says it is.

"Under the ADA, in the absence of direct evidence of disability discrimination, a plaintiff may seek to establish a prima facie case of discrimination . . . [by] show[ing] that [s]he is (1) a disabled person within the meaning of the [ADA], (2) that [s]he is otherwise qualified to perform the essential functions of [her] job with or without reasonable accommodation, and (3) that [s]he suffered an adverse employment decision due to [her] disability." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999) (citation omitted).

"Once established, a prima facie case shifts the burden to the employer to offer a legitimate, nondiscriminatory reason for its action. If the employer articulates such a reason, the plaintiff must then show that the reason given by the employer is pretextual in order to prevail." *Id.* (citations omitted). "To make a showing of pretext, in addition to disproving the defendant's stated reason, the plaintiff must also show by a preponderance of the evidence that the true motivation for the adverse employment action included intentional discrimination." *Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 82 (6th Cir. 2003) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ("a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, and that discrimination was the real reason.") (emphasis in original).) "To win on these claims, [a plaintiff] must show that disability discrimination was the 'but-for cause' of the adverse employment action." *Wheat*, 644 F. App'x at 429 (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc)).

**2.     Whether Plaintiff is "Disabled" or "Regarded as" Disabled**

The ADA "defines a disabled person as one who (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record

of such impairment, or (3) does not have an impairment, but is regarded as having one." *Sullivan*, 197 F.3d at 810 (citing 42 U.S.C. § 12102(2)).

"Major life activities are those 'that are of central importance to daily life,' such as 'caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Brady v. Potter*, 273 F. App'x 498, 502 (6th Cir. 2008) (quoting, respectively, *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) and *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002)). "A substantial limitation of such an activity exists when the individual's ability to perform that activity is limited to a large degree. It is not enough for the impairment to cause merely moderate or intermittent interruptions in the performance of the activity." *Id.* (citation omitted); *see also Barreca v. Travco Behavioral Health, Inc.*, No. 2013-T-0116, 2014 WL 3734186, at *3 (Ohio Ct. App. July 28, 2014) ("the fact that a person has an 'impairment' is not sufficient to satisfy the entire statutory definition.").

The District argues that a finding of "disability" is precluded by plaintiff's own testimony, which establishes that she was able to handle a variety of student caseloads, at differing grade levels, throughout her tenure with the District. (McCullough Dep. at 332, 344-45, 368-69, 370-71.) Even after her diagnosis of fibromyalgia in October 2013, she did not ask for any accommodation, other than being allowed to leave a few minutes early upon occasion to go for doctor appointments. (*Id.* at 363, 365.) Although she believes that she should have been given a caseload of older students when she returned following her leave, she testified that Trumpower was unaware that she was returning from leave (*id.* at 377-78); that another teacher had been assigned the students she had been teaching pre-leave (*id.* at 378); that she was assigned the first and second graders of another teacher who was out on an extended medical leave, replacing the substitute teacher (*id.* at 378-79); and that she never asked to teach fourth and fifth grade students

11

following her return, although she did inquire about it (*id.* at 381-82), nor did she have her physician make any such request (*id.* at 383). She also never filed a grievance regarding her grade assignment. (*Id.*)

Further, plaintiff testified that, at the time of her deposition, she was employed as a long-term intervention specialist substitute for a charter school, a position that required her to travel within a one-hour radius of her home. (*Id.* at 158-59.) She stated that she has no difficulties performing those duties without any accommodations. (*Id*. at 168.)[14]

The District asserts that "the record is devoid of evidence that [p]laintiff's condition had ***any limiting effect*** on her ability to perform her responsibilities as an Intervention Specialist." (Mot. at 466, emphasis in original.) Therefore, she cannot establish the first prong of the *prima facie* test.

In opposition, plaintiff does not directly address defendant's arguments. Rather, she simply claims she has raised a material factual dispute with respect to whether she is disabled. Plaintiff points to the December 15, 2016 letter of her physician, Dr. Jean Dib, which states:

> Aleicia McCullough . . . is a patient of mine. This patient has severe debilitating Fibromyalgia. She receives medical treatment from me. Aleicia is in generalized intractable pain. Fibromyalgia is a physical impairment well known to interfere with patient's life and activities. Fibromyalgia [is] an incurable disease and could lead to disabilities in my opinion.

---

[14] Although plaintiff herself does not point this out in her opposition brief, she did testify during her deposition that, in July 2013 (before her October 2013 diagnosis), she started having unexplained pain. She states: "I couldn't wash clothes, I couldn't wash dishes. . . . I had to cut off all of my hair because my hair hurt." (McCullough Dep. at 232.) She also lists several events that she missed, including her children's Christmas programs, Christmas, Thanksgiving, Christmas plays, parent-teacher conferences, Easter, family reunions, meetings with colleagues, her mother-in-law's 75th birthday, the birth of a niece, and field trips. But none of this is in any context and is insufficient to show that any major life activity was limited. Even taking as true that she missed all of these events, without more context, these could amount to no more than "intermittent interruptions in the performance of the activity." *Brady*, 273 F. App'x at 502 (citation omitted). This is insufficient to meet plaintiff's burden.

(Opp'n at 556 and Ex. 14.) Plaintiff argues that "Dr. Dib's medical opinion is uncontested in this case[,]" and, therefore, this testimony[15] alone raises a genuine issue of material fact as to whether she was disabled." (*Id.*, footnote added.) Plaintiff also argues that the Sixth Circuit "has expressly recognized that fibromyalgia can be a disability." (*Id.* and n. 104, citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).[16]) Finally, plaintiff claims that she "provide[d] facts linking her fibromyalgia to limitations in handling her job duties." (*Id.*) She states:

> For one, this was the very reason why McCullough wanted (and thought she was getting) an accommodation once she returned from medical leave by being able to teach older children (fourth and fifth graders) as opposed to younger children. McCullough testified that this accommodation would have allowed her to stay more stationary and not "have to do as much ripping and running around" for the children. This correlation is clear given that fibromyalgia is a medical condition marked by "chronic diffuse widespread aching and stiffness of muscles and soft tissues" thus keeping someone like McCullough in constant "generalized intractable pain."

(*Id.* at 556-57, internal citations omitted.)

Plaintiff's argument is unavailing. Her reliance on Dr. Dib's letter (which is dated December 15, 2016) is misplaced. Although stating that plaintiff has severe debilitating

---

[15] Ex. 13 to plaintiff's opposition brief is an affidavit from Dr. Dib attesting that Ex. 14 "is a true, accurate and complete copy of a letter I signed regarding my treatment of Ms. McCullough and her fibromyalgia."

[16] *Rogers* is a case where a Social Security disability claimant who suffered pain and other symptoms associated with fibromyalgia and rheumatoid arthritis challenged the denial of disability benefits. The Sixth Circuit reversed and remanded the district court's opinion affirming that denial. The court applied the analytical framework for Social Security review and concluded that the Administrative Law Judge's ("ALJ") decision was not supported by substantial evidence because the ALJ rejected the opinions of treating physicians in favor of those of non-treating ones and completely failed, in violation of the procedural requirements, to offer reasons for the rejection. The Court remarked: "While noting that Rogers has been diagnosed with fibromyalgia, the ALJ's decision reflects some hesitancy in identifying this accepted medical condition as a severe impairment, and this hesitancy, in turn, influenced the ALJ's weighing of the treating physician evidence." *Rogers*, 486 F.3d at 243 (footnote omitted). In that context, the court then noted: "On at least one occasion, we have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.* (footnote and citations omitted). The Sixth Circuit criticized the ALJ for relying upon types of medical tests that "are not highly relevant in diagnosing [fibromyalgia] or its severity." *Id.* at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia)). Thus, the Sixth Circuit did not declare that fibromyalgia *is* a disability.

fibromyalgia and is in generalized intractable pain, the letter does not state when plaintiff developed that level of symptoms nor does it state that any of plaintiff's major life activities are curtailed as a result of the disease. It merely states the fact that the disease is *known* to interfere with life activities and *could* lead to disability. The *Rogers* case cited by plaintiff stands for the same proposition.

Plaintiff's own deposition testimony, coupled with the letter from her treating physician, precludes a conclusion that she is "disabled" within the meaning of the ADA[17] because there is no medical opinion or other evidence that her fibromyalgia substantially limits one or more major life activity. Indeed, plaintiff does not point to any such impairment and, in fact, testified that she does not consider herself to be disabled at all. (McCullough Dep. at 383-84.)

Plaintiff also claims that she was "regarded as" disabled. To establish this claim, plaintiff must show that the defendant: (1) mistakenly believes she has a physical impairment that substantially limits one or more major life activity, or (2) mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activity. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001) (citing *Sutton v. United Air Lines*, 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999)).

Plaintiff asserts that she was regarded as disabled because "on not one, but two separate instances, December 20, 2013 and May 2, 2014, Bouie and Trumpower found McCullough unresponsive in the classroom to the point where she either needed emergency medical attention or time to rest." (Opp'n at 557, footnote omitted.) But the incidents that plaintiff references, by themselves, do not support a "regarded as" claim. Rather, at most, these incidents show that, on

---

[17] Plaintiff has also twice applied for Social Security disability benefits. Each time, her claim was denied. She unsuccessfully appealed the first denial, but did not appeal the second. (McCullough Dep. at 310-11.)

two occasions when plaintiff became ill at school in the presence of her students, District employees assisted her and permitted her to go home, even checking that she arrived safely. This is common courtesy, not the basis for a "regarded as" claim.

Plaintiff also points to an April 22, 2014 email from Nero to Val Pack, the District's director of special education, stating that, since McCullough had "been out on leave[,]" Nero had "not anticipate[d] her return based on the information [he] had." (Opp'n Ex. 18.) He further stated: "We need to think about where to place her should she be back next year." (*Id.*) Plaintiff refers to this as an "admission" by Nero, but is unclear what she believes was admitted. Nero does mention in his email that plaintiff "is also very at risk[,]" (*id.*), but, again, what that means is unclear. Notably, plaintiff does not claim that either Nero or Pack were decision-makers with respect to her contract. *See Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 703 (6th Cir. 2016) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden") (a direct evidence case). Rather, Nero seems to be merely alerting Pack to the possibility that, despite his assumption that McCullough would not be returning to work, since she *had* come back, they might need to be prepared to place her for the *following* school year. As it turned out, McCullough's contract was not renewed by the District.

On this record, plaintiff is unable to show that she was either "disabled" or "regarded as" disabled within the meaning of the ADA. That alone would entitle the District to judgment as a matter of law on Counts I through IV.[18] But the Court will also examine the District's reason for its non-renewal of McCullough's contract.

---

[18] The Court will not address the District's argument that plaintiff was not "otherwise qualified" because it improperly conflates that concept with the question of a legitimate nondiscriminatory reason for the adverse employment action. The gravamen of the District's position is that, because plaintiff had, in its view, less than stellar performance reviews, she was not qualified, with or without an accommodation. But qualification has to do with credentials, not

## **Legitimate Nondiscriminatory Reason for the Adverse Employment Action**

The District's final argument is that plaintiff's one-year limited contract was not renewed for a third time because of "performance deficiencies which continued to escalate despite ongoing supports being provided over a three-year period." (Mot. at 468.) It claims that plaintiff can point to no evidence that this was a mere pretext for discrimination.

To show pretext, a plaintiff must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citation omitted).

Plaintiff acknowledged in her deposition that she had some deficiencies in her performance reviews. During her first two years, her final performance evaluation was "Proficient," using the PGAS. During her third year, when the District began using the OTES, a new, more rigorous evaluation form mandated by the State of Ohio, her first performance review was "Ineffective," her second was "Developing," but her final one was once again "Ineffective." Plaintiff complains that it was during this final year that she began suffering from fibromyalgia and, due to her leave,

---

performance. The Equal Employment Opportunity Commission's interpretive guidelines provide a good example that elucidates the meaning of "otherwise qualified."

> [I]f a law firm requires that all incoming lawyers have graduated from an accredited law school and have passed the bar examination, the law firm need not provide an accommodation to an individual with a visual impairment who has not met these selection criteria. That individual is not entitled to a reasonable accommodation because the individual is not 'otherwise qualified' for the position.
>
> On the other hand, if the individual has graduated from an accredited law school and passed the bar examination, the individual would be "otherwise qualified." The law firm would thus be required to provide a reasonable accommodation, such as a machine that magnifies print, to enable the individual to perform the essential functions of the attorney position, unless the necessary accommodation would impose an undue hardship on the law firm.

29 C.F.R. § 1630.9, App. A. Plaintiff was hired for the position of Intervention Specialist and had her initial one-year contract renewed twice. The District cannot now be heard to argue that she was not qualified (*i.e.*, lacked the credentials) for the position.

her job performance review was based on fewer observations and less data than other teachers. (Opp'n at 561.)

Plaintiff also claims that "there is evidence that along with McCullough, the other intervention specialist at Schreiber who was not renewed for 2014-2015 was Kuhns, who just so happened to have taken medical leave around the same as McCullough." (*Id.*, citing Bouie Dep. Ex. 30 and Trumpower Dep. at 798-99 and Ex. 12.) But the Bouie exhibit cited by plaintiff is an email that merely inquires whether McCullough and Kuhns were advised to pick up their personal belongings and sheds no light on the identity of Kuhns or why (or even whether) she was actually terminated. Trumpower's cited testimony and exhibit are little more help. Trumpower testified that Kuhns asked for a leave because she was struggling with the death of a family member; for lack of any other description, she called the leave "medical."

That a person "was fired because of her poor job performance does not establish discrimination on the basis of her disability." *Green v. Alcan Aluminum Corp.*, No. 98-3775, 1999 WL 1073686, at *2 (6th Cir. Nov. 16, 1999) (citation omitted). Nor does this Court sit as a "super" human resources department to second-guess the professional decisionmaking of the District. *Hedrick v. W. Res. Care System*, 355 F.3d 444, 462 (6th Cir. 2004) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)).

Even if plaintiff were able to establish a *prima facie* case, she is unable to establish that defendant's reason for not renewing her contract was pretextual, much less that it was a pretext *for discrimination*.

17

## III. CONCLUSION

Defendant Board of Education of Canton City School District is entitled to summary judgment on plaintiff's federal and state claims of disability discrimination (Counts I through IV, inclusive). Therefore, the District's motion for partial summary judgment (Doc. No. 29) is **granted.**

**IT IS SO ORDERED**.

Dated: August 2, 2017

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**